UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DILLON THOMPSON                                                      Plaintiff

v.                                              Civil Action No. 3:24-cv-00243-RGJ-CHL

LOUISVILLE JEFFERSON COUNTY                                       Defendants
METRO GOVERNMENT

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant River City Fraternal Order of Police Lodge No. 614, Inc. ("River City FOP")
moves to Dismiss [DE 7] Count II of the Complaint [DE 1]. Plaintiff Dillon Thompson
("Thompson") responded [DE 16] and filed a Motion to Amend Complaint [DE 15]. River City
FOP replied [DE 17] and responded to Thompson's Motion to Amend Complaint [DE 20]. Lastly,
Thompson filed a Second Motion to Amend [DE 24] which received no response.

## I.      BACKGROUND

Thompson served as police officer with the Louisville Metro Police Department ("LMPD")
starting in February 2017, and was a dues paying member of the River City FOP throughout his
employment [DE 1 at 3]. River City FOP was engaged in a collective bargaining agreement with
the LMPD for the benefit of enrolled members such as Thompson. *Id*. The bargaining agreement
contained provisions for sick leave, including for the illness of a child which stated that "[s]ick
leave with pay may be granted at the discretion of the Chief to a Member in case of illness or
disability in the Member's immediate family reasonably requiring the presence of the Member.
The immediate family of the Member for the purpose of this section shall include parents, spouse,
and children." *Id*. at 6. During his time with the LMPD Thompson was never disciplined while on

1

the job until the events of this matter. *Id*. at 5. He received several awards and recognitions for his service with the LMPD. *Id*. at 4-5.

In 2021 Thompson's son was born with respiratory issues and severe allergies. *Id*. Thompson's son required additional at home care and frequent trips to the doctor. *Id*. Throughout 2022 and 2023 Thompson's son's health worsened. *Id*. He contracted covid-19 and the flu, and suffered from chronic ear infections, high fevers, and excessive diarrhea and vomiting. *Id*. These conditions resulted in frequent visits to the pediatrician, allergy specialists, immediate care centers, and the emergency room. *Id*. Thompson's superiors Lt. Matthew Keller ("Keller") and Sgt. Robert Ward ("Ward") told Thompson that "his son seemed to be sick a lot and that it would be best for him to step away from the unit to focus on his family." *Id*.

On or about December 16, 2022, Thompson started classes for LMPD's Traffic Unit in Lexington, Kentucky. *Id*. at 6. Ward instructed Thompson and the four other officers in the traffic course to put in for three hours of overtime on class days to account for travel time, but later instructed them to log only two hours. *Id*. One day all officers were sent home early, and all officers logged in their overtime. *Id*. During his traffic training course Thompson missed class or left early on three separate occasions. *Id*. at 7. First, on or about December 15, 2022, Thompson called in sick with a fever. *Id*. Second, on or about March 8, 2023, Thompson left class early because his son was having respiratory issues. *Id*. Finally, on or about March 10, 2023, Thompson told his instructor that he would be late as his child had a fever and respiratory problems that required a trip to the pediatrician. *Id*. Thompson provided medical documentation for his son's illness. *Id*.

On or about April 28, 2023, Thompson was called into a meeting with Keller and Ward where he was charged with absence without leave for failing to notify Ward when he missed classes in Lexington. *Id*. Thompson was also charged with overtime fraud for the day his class was

dismissed early. *Id*. at 8. His classmates were not charged. *Id*. Finally, Thompson was written up for signing his name on a time sheet for a day he was not in class, which he contends was a mistake that he did not benefit from monetarily. *Id*.  Thompson was then transferred from the traffic unit to the second division, prompting River City FOP to file a grievance on his behalf. *Id*. at 7-8.

On or about September 22, 2023, Thompson was given a pre-termination document proposing his removal before he was relieved of his police powers and equipment. *Id*. at 8. Thompson was advised by River City FOP's legal counsel and president that he was best off resigning. *Id*. at 9. He was told that his peace officer license would not be impacted and that there was no "no hire list" for him to worry about. *Id*. On or about November 1, 2023, Thompson resigned from the LMPD. *Id*. Thompson has been unable to find work with another police department and was told by the Louisville Metro Alcoholic Beverage Control Director that he was on a no hire list. *Id*. On or about February 20, 2024, Thompson received notification from the Kentucky Law Enforcement Council that a hearing would be held to determine if his peace officer license would be revoked. *Id*. at 10.

Thompson sued River City FOP and LMPD on April 17, 2024 [DE 1 at 1]. Thompson's complaint contained three counts; Count I Interference with FMLA Rights, Count II Breach of the Duty of Fair Representation, and Count III Breach of Contract. Only the second, Breach of the Duty of Fair Representation, was brought against River City FOP. River City FOP moved to dismiss Count II and Thompson files two amended complaints.

## II.    ANALYSIS

There are three motions ripe before the court, River City FOP's Motion to Dismiss, [DE 7] Thompson's Motion to Amend Complaint, [DE 15] and Thompson's Second Motion to Amend Complaint [DE 24]. "When there are pending before the court both a dispositive motion and a

motion to amend the complaint, the court must first address the motion to amend complaint." *Gallaher & Assocs., Inc. v. Emerald TC, LLC*, No. 3:08-CV-459, 2010 WL 670078, at *1 (E.D. Tenn. Feb. 19, 2010) (citing *Ellison v. Ford Motor Co*., 847 F.2d 297, 300 (6th Cir. 1988)).

## A. THOMPSON'S FIRST [DE 15] AND SECOND MOTION TO AMEND [DE 24]

### 1. Standard

Fed. R. Civ. P. 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of the pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Centers., Inc*., 427 F.3d 996, 1001 (6th Cir. 2005) (*citing Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998)).   "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss*." Rose v. Hartford Underwriters Ins*., 203 F.3d 417, 420 (6th Cir. 2000).

### 2. Analysis

#### i. *Thompson's First Amended Complaint [DE 15]*

In his first amended complaint, Thompson seeks to change the statutory basis for Count II, breach of duty of fair representation, to allege violations of Ky. Rev. S. § 67C.402 rather than violations of the Labor Management Relations Act ("LMRA"). [DE 15 at 71]. In their response [DE 20 at 133] River City FOP "admits that Plaintiff has the right to amend the complaint according to the Federal Rules of Civil Procedure 15." This case is in its early stages and

4

Thompson has not unduly delayed in seeking leave to amend. River City FOP and LMPD will not be unfairly prejudiced or disadvantaged. The first amended complaint is superseded by Thompson's second amended complaint; however, the second amended complaint includes the changes made in the first and analyzed here.

        *ii.      Thompson's Second Amended Complaint [DE 24]*

In his second amended complaint Thompson seeks to add Count IV[1], discrimination, harassment, and the exclusion and denial of equal jobs or benefits based on "the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). No response or objection has been filed to Thompson's motion for leave to amend his complaint and the time for doing so has passed. This case is in its early stages and Thompson did not unduly delay in seeking leave to amend. The Court was notified of his intent to file a second amended complaint after the exhaustion of his remedies under the EOC when he filed his first amended complaint. Thompson's Motion for leave to amend his complaint shall be **GRANTED**.

### A.  RIVER CITY FOP'S MOTION TO DISMISS [DE 7]

#### 1.  Standard

Fed. R. Civ. P. 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the complaint.  Generally, 12(b)(1) motions fall into two categories: facial attacks and factual attacks.  *United States v. Richie,* 15 F.3d 592, 598 (6th Cir. 1994).  In a facial attack, the defendant asserts that the allegations in a complaint are insufficient on their face to invoke federal jurisdiction.  *Id*.  By contrast, in a factual attack, the defendant disputes the truth of

---

[1] Thompson also seeks to add Count V, punitive damages. However, Punitive damages are "actually a prayer for relief, not a separate cause of action[.]" *Baird v. Bayer Healthcare Pharms., Inc*., No. CIV.A. 6:13-077-DCR, 2013 WL 5890253, at *10 (E.D. Ky. Oct. 31, 2013). As such there can be no independent Count V alleging a claim of punitive damages.

the allegations that, by themselves, would otherwise invoke federal jurisdiction, and the court is free to weigh the evidence. *Id*.  Plaintiff has the burden of proving subject matter jurisdiction to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).  Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir. 1990).

The exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367. 28 U.S.C. Section 1367(c) permits a district court to decline to exercise supplemental jurisdiction over a claim if "it raises a novel or complex issue of state law; it substantially predominates over the claims over which the court had original jurisdiction; the court has dismissed all claims over which it had original jurisdiction; or in exceptional circumstances in which there are other compelling reasons to decline jurisdiction." 28 U.S.C. § 1367(c); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966), *Perry v. Owensboro Health, Inc.*, No. 4:14-CV-00046-JHM, 2015 WL 4450900, at *9 (W.D. Ky. July 20, 2015)

When deciding whether to exercise supplemental jurisdiction, "federal courts balance the values of judicial economy, convenience to the parties, fairness and comity to state courts." *Packard v. Farmers Ins. Co. of Columbus.*, 423 F. App'x 580, 584 (6th Cir. 2011) (*citing City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997); *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010)). Decisions of the Sixth circuit have "consistently affirmed that supplemental jurisdiction is a 'doctrine of discretion, not of plaintiff's right.' *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). If a district court declines to exercise jurisdiction over a claim asserted under § 1367(a) and the plaintiff wishes to continue pursuing it, he must refile the claim in state court. *Artis v. D.C.*, 583 U.S. 71, 76, (2018)

2. **Analysis**

i.     *River City FOP's qualification as a Labor Organization*

River City FOP argues that they do not meet the definition of a "labor organization under 29 U.S.C. § 152(5), despite Thompson's argument to the contrary. To qualify as a labor organization under § 152, the organization must represent employees in dealings with a valid employer. § 152. According to § 152(2), the definition of employer "shall not include . . . any State or political subdivision thereof." 152(2). River City FOP represents police officers in their dealings and disputes with the LMPD, a police agency that is part of the city of Louisville and therefor a political subdivision of the state of Kentucky. The LMPD is not a statutorily defined employer, and River City FOP does not qualify as a labor organization under § 152.

However, in the amended complaint Thompson alleges violations of Ky. Rev. S. § 67C.402, a state law provision.  As such, it is the state law definition, not federal, that determines whether River City FOP is a labor organization under this cause of action. According to Ky. Rev. S.  67C.400 "Definitions for Ky. Rev. S. 67C.400 to 67C.418**"** a labor organization is defined as

> any chartered labor organization of any kind in which police officers participate and which exists for the primary purpose of dealing with consolidated local governments concerning grievances, labor disputes, wages, rate of pay, hours of employment, or conditions of employment.

River City FOP is an organization of police officers which exists for the primary purpose of dealing with consolidated local governments. As such River City FOP is a labor organization for purposes of Kentucky state law and Ky. Rev. S. **§** 67C.402.

ii.     *Dismissal Under 28 U.S.C. § 1367(c)(1)*

River City FOP argues that the "duty of fair representation" under Count II relies solely on supplemental jurisdiction to bring a novel Kentucky state law claim and should be dismissed [DE 17 at 112]. Under 28 U.S.C. § 1367(c)(1), "district courts may decline to exercise supplemental

jurisdiction over a claim under subsection (a) if - (1) the claim raises a novel or complex issue of State law." When determining whether to dismiss novel state law issues district courts must balance the "interests of judicial economy and the avoidance of multiplicity of litigation" against "needlessly deciding state law issues." *Landefeld v. Marion General Hosp., Inc*., 994 F.2d 1178, 1182 (6th Cir. 1993).

The state law issue this Court has been asked to resolve is whether Ky. Rev. S. § 67C.402 contains an implied duty of fair representation. Ky. Rev. S. § 67C.402 itself does not explicitly include a claim of fair representation, but Thompson alleges that one can be "interpreted" from the explicit duty to represent "the interest of all police officers in the unit without discrimination." Ky. Rev. S. § 67C.402(3). [DE 24 at 163]. Thompson does not cite to any Kentucky state caselaw to show a duty of fair representation contained in Ky. Rev. S. § 67C.402, and this Court was unable to find any itself. Instead, Thompson cites to a Sixth circuit case*, Ryan v. Gen. Motors Corp*., for his definition of breach of duty of fair representation. *Ryan v. Gen. Motors Corp* 929 F.2d 1105, 1109 (6th Cir. 1989). According to *Ryan*, breach of the duty of fair representation occurs when "the union's conduct is arbitrary, discriminatory or in bad faith; the union processes the grievance in a careless manner; or the union inadequately handles the grievance because it is ignorant of contract provisions having a direct bearing on the case*." Ryan, 929 F.2d at 1109*. Thompson's application of *Ryan* to Ky. Rev. S. § 67C.402 appears to be primarily based on their reference to representation without "discrimination." Without a clear cause of action within the statute, and no existing caselaw that finds such a right, Thompson's second amended complaint raises a novel and complex issue of state law.

Thompson alleges that this Court can hear Count II through supplemental jurisdiction [DE 24-2 at 151]. When deciding whether to exercise supplemental jurisdiction under 28 U.S.C. §

1367(c)(1) courts "balance interests of judicial economy and the avoidance of multiplicity of litigation" against "needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182. District courts have broad discretion when deciding whether to exercise supplemental jurisdiction. *Musson Theatrical Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). Count II poses an exclusive state law question on an issue that state courts have not yet ruled on. To issue a decision on this matter this Court would be "needlessly deciding" an issue of state law independent of the other federal claims in the complaint.[2] Additionally, given the early stage of these proceedings Thompson will be minimally delayed and inconvenience by a dismissal of Count II at this stage. *See Musson Theatrical, Inc.,* 89 F.3d at 1255 (suggesting that dismissal of state claims is more appropriate "when the court has not yet invested a great deal of time" into their resolution). Without any "overwhelming issues of judicial economy," and given the novel nature of the state law claims, this court is well within the bounds of its discretion to decline to hear Count II based on supplemental jurisdiction. *James v. Hampton*, 592 F. App'x 449 (6th Cir. 2015). River City FOP's Motion to Dismiss is **GRANTED**.

### III.    CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS:**

1.  Thompson's Motion for Leave to Amend his Complaint [DE 15] is superseded by his Second Amended Complaint [DE 24] and is **DENIED as MOOT.**

2.  Thompsons Second Motion for Leave to Amend his Complaint [DE 24] is **GRANTED**.

---

[2] Additionally, Ky. Rev. S. § 67C.410 is a general statute that defines collective bargaining rights. It provides remedies for specific violations and gives the cabinet authority to remedy unfair labor practices. Ky. Rev. S. § 67C.410 contemplates specific state law remedies that this Court will not interfere with through supplemental jurisdiction.

3.  Thompson's Second Amended Complaint [DE 24] is deemed filed as of the date of this order.

4.  River City FOP's Motion to Dismiss is **GRANTED** and River City FOP is removed from this case.

5.  The Court will issue a separate litigation planning order pursuant to Fed. R. Civ. P. 16.


Rebecca Grady Jennings, District Judge
United States District Court

October 24, 2024